WILLIAM S. VAN CLIEF & SONS, INC., etc., Plaintiff, *v.* THE CITY OF NEW YORK and Others, Defendants.

Supreme Court, New York County, July 30, 1931.

*Spencer & Iserman* [*Maurice Iserman* of counsel], for the plaintiff.

*Arthur J. W. Hilly, Corporation Counsel* [*Samuel H. Wandell* of counsel], for the defendant The City of New York.

*Thomas F. Conway* [*Thomas E. O'Brien* and *William F. Pritchard* of counsel], for the defendants Globe Indemnity Company, Century Indemnity Company, and Independence Indemnity Company.

UNTERMYER, J. In 1928 the city of New York contracted with the Paulsen Construction Corporation for the construction of a sewerage system. Plaintiff, a materialman, furnished to the Paulsen Construction Corporation materials which were used in the work. For these materials it has not been paid. In compliance with the ordinance (New York Code of Ordinances, chap. 2, art. 2, § 72), the city, prior to the commencement of the work, exacted a bond executed by the defendant surety companies, conditioned for the faithful performance of all the terms of the contract by the defendant Paulsen Construction Corporation. That contract among others contained the following provisions: " V. The Contractor hereby agrees to furnish and provide all materials, labor and appliances necessary and proper for the purpose, to excavate for, build, complete and connect in a good substantial manner, to the satisfaction of the engineer, and in conformity with the contract the hereinbefore entitled work * * *. XXIX. The Contractor will pay promptly, and in cash, for all labor employed upon and all materials furnished and used in the work, and if at any time before or within thirty days after the whole work herein agreed to be performed has been completed and accepted by the City, any person or persons claiming to have performed any labor or furnished any materials towards the performance and completion of the contract shall file with the President and with the Comptroller of the City any such notice as is described in the Lien Law * * * the City shall retain — anything herein contained to the contrary thereof notwithstanding — from the moneys under its control and due or to become due under this contract, so much of the moneys as shall be sufficient to pay off, satisfy and discharge the amount in such notice alleged or claimed to be due * * *. The money so retained shall be retained by the City until the lien thereon created by the said Act and the filing of the said notice shall be discharged pursuant to the provisions of the said Act. XXX. The Contractor will not, at any time, suffer or permit any lien, attachment, or other incumbrances, under the law of this State or otherwise, by any person or persons whomsoever, to remain on file in the Finance Department or at the office of the City Department having supervision of the work against any

money due or to become due for any work done or materials furnished under this contract * * *." The work has been completed; it has been accepted and fully paid for by the city. The plaintiff alleges that it has made demand upon the city to institute action against the sureties on the bond to recover, as trustee, the amounts unpaid by the contractor for labor and materials used in the work. The city refused to institute the action, and the plaintiff is now suing on behalf of itself and others similarly situated, to enforce the provisions of the bond. It demands judgment ascertaining the amount of its claim and that the defendants Globe Indemnity Company, Century Indemnity Company and Independence Indemnity Company be required to pay said sum to the defendant The City of New York and that the defendant City of New York be required to pay said sum, when so received, to the plaintiff, and that the court adjust and determine the equities of all the parties and the amounts of the claims of such others as may come in and prove their claims. The defendant sureties and the city of New York, which has been joined as a party defendant to the action upon the theory that it occupies the position of a trustee, have moved to dismiss the complaint.

It is true, as the defendants contend, that the bond contains no covenant that the contractor will pay for labor and materials supplied in connection with the work. But this is immaterial. By their bond the defendant sureties have covenanted that the contractor will perform the contract, and the contract provides that "the Contractor will pay promptly, and in cash, for all labor employed upon and all materials furnished and used in the work." By express reference the contract was thus incorporated in the bond. Therefore, when the sureties agreed that the contractor would perform the contract they agreed that the contractor would pay for all labor and material. The bond and the contract must be construed as one instrument. (Stearns, Suretyship [3d ed.], § 125; *Searles* v. *City of Flora*, 225 Ill. 167; *Brown* v. *Markland*, 22 Ind. App. 652; *American Bonding Co.* v. *Pueblo Inv. Co.*, 150 Fed. 17.)

The question which remains, however, and the fundamental question here, is whether the plaintiff may avail itself of the bond which was given to the city to assure performance of the contract. The answer to that question would seem to depend on whether it was the dominant intention thereby to protect the interests of the city or to safeguard materialmen in the payment of their claims. "Such a beneficial intent must be clearly found in the agreement." (*Beveridge* v. *N. Y. El. R. R. Co.*, 112 N. Y. 1, 26.) Obviously, the plaintiff and others in like position would derive benefit from the full performance of their undertaking by the sureties, but this

is not sufficient if those benefits are merely incidental to the purpose for which the city, in its own interest and for its own protection, had caused the bond to be given. To allow a right of action to one not a party to the contract, the condition seems universally to be recognized as necessary that the contract will not merely operate, but shall have been intended, for his benefit. Although the right of third persons to enforce contracts to which they are not parties has been vastly extended in modern times (*Seaver* v. *Ransom*, 224 N. Y. 233), it may be stated as a general principle that the rights of such third persons will be only such as the parties to the contract by which those rights are created intended they should be. (*Skinner Bros. Mfg. Co., Inc.,* v. *Shevlin Engineering Co., Inc.,* 231 App. Div. 656.) " It is not every promise made by one to another, from the performance of which a benefit may ensue to a third which gives a right of action to such third person * * *. The contract must be made for his benefit as its object, and he must be the party intended to be benefited." (*Simson* v. *Brown*, 68 N. Y. 355, 361.)

Was it then the intention by this bond to protect the city or to protect those who might furnish labor or material? Unlike *Strong* v. *American Fence Construction Co.* (245 N. Y. 48) and *Wilson* v. *Whitmore* (92 Hun, 466; affd. on opinion below, 157 N. Y. 693), the bond here was not given in compliance with any statute requiring that it be furnished for the benefit of materialmen. Unlike, also, the bond considered in *Maltby & Sons Co.* v. *Wade* (131 Misc. 143; affd., 224 App. Div. 779), it contains no provision expressly allowing materialmen to maintain suit thereon. On the contrary, it guarantees only to the city of New York, the sole obligee, that the contractor will perform its contract. Such a bond is not regarded as falling within the category of a public contract whereby the municipality seeks to protect its citizens by stipulations entered into for their benefit. (*Moch Co.* v. *Rensselaer Water Co.*, 247 N. Y. 160, 164.) The provision of the contract on which the plaintiff relies is, moreover, found coupled with provisions permitting the city to withhold contract funds sufficient to satisfy any liens filed with the city by unpaid materialmen or laborers. It is a fair deduction from this alone that the purpose of the provision of the contract on which the plaintiff relies was to insure to the city completion of the work free from claims of any kind in order to protect the city from the annoyance, responsibility and expense which might result from the filing of liens and the necessity of apportioning among various claimants any funds due under the contract. (See *Buffalo Cement Co.* v. *McNaughton*, 90 Hun, 74, 77; affd. on opinion below, 156 N. Y. 702.) Indeed, it might

fairly be contended that the remedy thus provided by the contract is exclusive of all others. (*Village of Argyle* v. *Plunkett*, 226 N. Y. 306.)

Decisions in this State, even when the bond is expressly conditioned on the payment of laborers and materialmen, have uniformly denied to them a right of action on the bond. (*Fosmire* v. *National Surety Co.*, 229 N. Y. 44; *Eastern Steel Co.* v. *Globe Indemnity Co.*, 227 id. 586; *Buffalo Cement Co.* v. *McNaughton, supra.*) In *Fosmire* v. *National Surety Co.* (*supra*) the court, speaking of a bond similarly conditioned, said: "In so holding, we put our decision upon the single ground that the bond, read in its entirety, is inconsistent with an intention that the plaintiff and others in like position should have the right to sue upon it. If that intention is absent, the right to sue will be denied." And the court added: "The plaintiff fails, therefore, to establish that he and his fellow laborers were the donees of a right to sue (Anson on Contracts [Huffcut's ed.], p. 282)." The *Fosmire* case, it is true, was an action at law upon the bond. It is true also, as the court points out, that, in such an action, enforcement of the bond by third persons might exhaust the security which was primarily intended for the municipality. But though that action was at law and, therefore, led to consideration of the conditions which would follow if it were allowed to be maintained, it was nevertheless also held, if I correctly read the decision in that case, that the laborer or materialman was not the party intended to be benefited and that an action on the bond was, therefore, maintainable, if maintainable at all, only by the party to whom the bond was given. "What the defendant's liability would be if the action were prosecuted by the People we need not now determine. That question is not here." (*Fosmire* v. *National Surety Co., supra.*)

The right of the promisee to enforce the bond, thus left open in the *Fosmire* case, was decided in *Johnson Service Co.* v. *Monin, Inc.* (253 N. Y. 417), on which the plaintiff principally relies. There subcontractors had brought suit in equity to recover on the bond and had joined as a defendant the city of Lockport, to whom the bond was given. The city joined in the prayer of the subcontractors that the surety be required to pay in accordance with the bond, and thus assumed the position of a plaintiff in the suit. It was held upon the authority of *Croker* v. *New York Trust Co.* (245 N. Y. 17) that the promisee could maintain suit to require the promisor to perform the contract. There is here no implication that third parties could do likewise either at law or in equity where they are not "the donees of a right to sue." (*Fosmire* v. *National Surety Co., supra*, 49.) I am aware of no principle whereby

a third party in that position may require the promisee to institute suit for his benefit upon the theory that the contract constitutes a trust. (See *Board of Education* v. *Massachusetts Bonding & Insurance Co.*, 252 Penn. St. 505.) The circumstance that the enforcement of the contract would result in incidental benefit to others ought not to impose upon the promisee the duties of trustee. Undoubtedly, if the city should, in equity, specifically enforce the bond against the sureties, the proceeds of the judgment would be held for the use of the plaintiff and others similarly situated, to whom, under the contract, such funds are payable. It was so held in the *Johnson* case where the court said (p. 422) that "what it [the surety] pays to the municipality will be subject to a trust for the benefit of the Buckeye Blower Company, and indeed for the avoidance of circuity may be paid to that company directly." I think it was not intended to decide that a third party with insufficient interest to maintain an action on a contract made between others might thereupon treat the promisee as trustee of a cause of action in his favor and, in effect, require him to sue in equity. To so hold would, it seems to me, nullify the very purpose of the city in exacting that provision of the contract which required the contractor to pay for all labor and material, so that the city might not be brought into direct relations with third parties who, although they could not file liens against the city's property, might file liens against the fund. (Lien Law, § 5, added by Laws of 1911, chap. 450.*) Consistent with that purpose the city has declined to bring suit on the bond because, the work having been completed and paid for, it no longer has any interest to serve thereby. To require the city now to maintain a suit for the benefit of subcontractors would frustrate one of the purposes for which, it would seem, the bond was required to be given. Although the city could maintain the suit and thereby indirectly benefit the plaintiff and others similarly situated, in my opinion, it assumed no such burden when it procured the bond.

I am aware that there exists a diversity of opinion on this question. In the following cases laborers and materialmen were permitted to enforce such bonds given to secure contracts of a public nature: *Southwestern Port. Cement Co.* v. *Williams* (32 N. M. 68); *Road Supply & Metal Co.* v. *Kansas Casualty & Surety Co.* (121 Kan. 299); *Lyman* v. *City of Lincoln* (38 Neb. 794); *Royal Indemnity Co.* v. *Northern Ohio Granite & Stone Co.* (100 Ohio St. 373); *Hipwell* v. *National Surety Co.* (130 Ia. 656); *Brown* v. *Markland* (22 Ind. App. 652); *National Surety Co.* v. *Hall-Miller Decorating*

* Re-enacted by Laws of 1929, chap. 515.— [REP.

222

*Co.* (104 Miss. 626); *Dolese Bros. Co.* v. *Cheney* (44 Okla. 745); *Ætna Casualty & Surety Co.* v. *Earle-Lansdell Co.* (142 Va. 435). The prevailing rule in other jurisdictions, however, accords with that which I believe to be the rule in this State. (*Skillman* v. *United States Fidelity & Guaranty Co.,* 101 N. J. L. 511; *Standard Gas Power Co.* v. *New Eng. Cas. Co.,* 90 id. 570; *Board of Education* v. *Massachusetts Bonding & Ins. Co., supra; Sturtevant Co.* v. *Fidelity & Deposit Co.,* 285 Fed. 367; *Eau Claire-St. Louis Lumber Co.* v. *Banks,* 136 Mo. App. 44; *Smith* v. *Bowman,* 32 Utah, 33; *Searles* v. *City of Flora, supra; Electric Appliance Co.* v. *U. S. Fidelity & G. Co.,* 110 Wis. 434; *State* v. *Jackson & Co.,* 137 La. 931; *Brower Lumber Co.* v. *Miller,* 28 Or. 565.)

The motion to dismiss the complaint must, therefore, be granted with leave to the plaintiff to serve an amended complaint within twenty days after service of notice of entry of this order.